# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:15-cr-70-J-34MCR

MICHAEL ROUNSVILLE
_____

## O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for New Trial (Doc. No. 335; Motion), filed on November 28, 2016. Following a four day jury trial, on November 14, 2016, the jury returned a verdict finding Defendant Michael Rounsville (Rounsville) guilty as to Count Two of the Indictment (Doc. No. 1; Indictment). See Verdict Form (Doc. No. 317; Verdict). Specifically, the jury found Rounsville guilty of intentionally accessing a law enforcement computer database without authorization or in excess of authorization, in violation of 18 U.S.C. § 1030(a)(2)(B), and that he did so for purposes of private financial gain and in furtherance of a criminal or tortious act, in violation of 18 U.S.C. § 1030(c)(2)(B). See id.; see also Indictment. In the Motion, Rounsville requests that the Court grant him a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (Rule(s)).[1] See Motion at 1. The Government filed a response in opposition to the Motion, see United States' Response to Defendant's Motion for New Trial (Doc. No. 348; Response), on December 19, 2016. Accordingly, this matter is ripe for review.

---

[1] In the Motion, Rounsville inadvertently references Federal Rule of Evidence 33. See Motion at 1. Because motions for new trial in the criminal context are governed by the corresponding Rule, the Court will construe the Motion accordingly.

**I.      Applicable Law**

Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[2]  Although motions for new trial are disfavored, see United States v. Williams, 146 Fed. Appx. 425, 434 (11th Cir. 2005), the "interest of justice" standard is broad, and the trial court is vested with substantial discretion in determining whether to grant the motion.  See United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994); United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).  The court considers "whether the verdict must be set aside 'in the interest of justice.'"  United States v. Green, 275 Fed. Appx. 898, 899 (11th Cir. 2008) (internal quotations omitted); see also Vicaria, 12 F.3d at 198; Hall, 854 F.2d at 1271 (concluding that the trial "court has very broad discretion in deciding whether there has been a miscarriage of justice"); Martinez, 763 F.2d at 1312.

When a defendant challenges the weight of the evidence in a motion for a new trial, the court "need not view the evidence in the light most favorable to the verdict" and "[i]t may weigh the evidence and consider the credibility of witnesses."  Martinez, 763 F.2d at 1312; see also Green, 275 Fed. Appx. at 900; United States v. McMahon, No. 8:04-cr-348-T-24TGW, 2007 WL 57778, at *1 (M.D. Fla. Jan. 5, 2007).  Yet, "'[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'"  Green, 275 Fed. Appx. at 900 (quoting Martinez, 763 F.2d at 1312-13).  Indeed, "[f]or a court to set aside the verdict, '[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to

---

[2]      As the Eleventh Circuit recognized, there are two grounds for granting a new trial under Rule 33: "interest of justice" and newly discovered evidence.  See United States v. Hall, 854 F.2d 1269, 1270 (11th Cir. 1988).  In this case, the only ground that could potentially be implicated in the Motion is the "interest of justice."  See generally Motion.

let the verdict stand.'" Id. (quoting Martinez, 763 F.2d at 1313). Motions for a new trial based on the weight of the evidence are to be granted "'sparingly and with caution,' only in 'exceptional cases.'" Id. (quoting Martinez, 763 F.2d at 1313).

## II.     Discussion

In the Motion, Rounsville argues that a new trial is warranted because the "evidence [against him] was insufficient to support a finding of guilt." Motion at 5. In challenging the sufficiency of the evidence presented, Rounsville's Motion presents two central and related questions: (1) whether inconsistencies in the testimony of two key Government witnesses rendered their testimony incredible; and (2) whether these witnesses had a motive to lie – and did in fact do so – as a result of their plea agreements with the Government. See id. at 2-4. Additionally, he argues that no witness affirmatively testified that he accessed the relevant law enforcement databases for financial gain. See id. at 5.

Turning to the first question, Rounsville attacks the credibility of Alex Rodriguez (Rodriguez) and Mollie Bass (Bass), both co-conspirators turned Government witnesses, arguing that their testimony contained "so many inconsistencies and vague statements that it did not connect the dots between [Rounsville] running the name [of the undercover agent] and [Rounsville] acting in excess of his authority or running the name in exchange for financial gain or to further a criminal or tortious act." Id. at 4. In response, the Government contends that this argument does nothing more than express a disagreement with the jury's verdict, which was supported by substantial evidence of Rounsville's guilt. See Response at 6. Rounsville takes particular issue with whether the Government's evidence was sufficient to prove that he acted for private financial gain or

in furtherance of a criminal act, as he contends that the Government witnesses testified inconsistently regarding whether he received payment in exchange for his help. See Motion at 2-3. Rounsville also argues that the Government witnesses presented an inconsistent timeline regarding the 'vetting' of the undercover agent, which suggests that the agent was already involved in the underlying criminal enterprise prior to the first and only time Rounsville utilized the relevant databases to run the undercover agent's name. See id. at 2. In making these arguments, Rounsville essentially asserts that the testimony of Rodriguez and Bass was contradictory with respect to key issues. However, pursuant to Eleventh Circuit precedent, for the Court to grant a new trial based on the weight of the evidence, "the credibility of the [G]overnment's witnesses [must have] been impeached and the [G]overnment's case [] marked by uncertainties and discrepancies." See Martinez, 763 F.2d at 1313. Here, the contradictions cited by Rounsville do not rise to this level.

Rodriguez' and Bass' testimony was for the most part consistent and corroborated in relevant parts by other evidence including the testimony of two federal agents, an employee of the Florida Department of Law Enforcement, and a detective with the Jacksonville Sheriff's Office. Each of these witnesses testified at trial regarding some aspect of the overall criminal enterprise or Rounsville's role in the criminal act alleged in the Indictment, and the jury believed their testimony. Notably, the Government presented unrebutted evidence that Rounsville ran a Driver and Vehicle Information Database (DAVID) search on the name used by the undercover agent, "Chad Cooper," and the Government also presented evidence that Rounsville ran the associated social security number that was being used by the undercover agent through a National Crime

Information Center (NCIC) search that triggered an alert on "Chad Cooper," the undercover agent's identity. The Government further presented evidence that Rounsville received both an envelope of cash and a motorcycle in return for "favors" offered to members of the underlying conspiracy.

Although a motion for a new trial allows the Court to weigh witness credibility, Martinez, 763 F.2d at 1312, Rounsville has failed to demonstrate that the inconsistences he identifies, either individually or collectively, preponderate heavily against the verdict such that the credibility of these witnesses merits reexamination. Notably, Rounsville also testified in his own defense, thereby permitting a reasonable jury and the Court to evaluate his credibility. In particular, Rounsville himself testified that he ran a query with the name "Chad Cooper" and the corresponding social security number through the law enforcement databases on July 28, 2012. While he testified that he would only have done so only if "Chad Cooper" was present, a reasonable jury was free to reject this explanation, particularly in light of the undercover agent's testimony that he was in Ohio on that date as well as the other evidence presented by the Government. Thus, to the extent Rounsville argues that the verdict cannot stand in the face of Rodriguez' and Bass' inconsistent testimony, this argument is unavailing. Although Rounsville does identify discrepancies in their testimony, see Motion at 2-3, on review of the record as a whole, the Court does not find that the evidence preponderates against the verdict.

As to the second issue raised in the Motion, the Court considers whether Rodriguez, and to a lesser extent, Bass, possessed such a compelling incentive to testify against Rounsville "in order to reduce their own sentences" that their testimony as a whole cannot be believed. See id. at 4-5. This argument is similarly unpersuasive. With respect

to Rodriguez and Bass, the Court recognizes that both individuals had plea agreements with the Government and could benefit by testifying against Rounsville. However, the Court's jury instructions (Doc. No. 316; Final Jury Instructions) squarely addressed this issue. Specifically, Jury Instruction No. 7 states:

> You must consider some witnesses' testimony with more caution than others. In this case, the Government has made a plea agreement with Codefendants in exchange for their testimony. Such "plea bargaining," as it is called, provides for the possibility of a lesser sentence than the Codefendant would normally face. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it. But a witness who hopes to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the Government . . . So while these kinds of witnesses may be entirely truthful when testifying, you should consider their testimony with more caution than the testimony of other witnesses.

See Final Jury Instructions at 7. Moreover, the record reflects that the Government communicated to the jury that both Rodriguez and Bass were cooperating with the Government in the investigation and prosecution of others as part of their plea agreements, and defense counsel vigorously cross-examined each of them with respect to their plea agreements, the benefits they might hope to obtain, and their ultimate motivation for testifying. The fact that these witnesses were also accomplices in the underlying criminal enterprise is of little import, as a reasonable jury is entitled to believe Government witnesses even if they include "an array of scoundrels, liars, and brigands." See generally United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981) (citation omitted) (discussed in the context of reviewing the denial of a motion for judgment of acquittal).

Here, the record reflects that the issues of the witnesses' criminal activity, drug activity, and capacity for truthfulness were thoroughly examined on both direct and cross-examination. Additionally, although the Government witnesses were unable to present a

storybook narrative of the events in question, the witnesses did offer similar and consistent testimony sufficient to corroborate one another. Indeed, "[t]his was not an instance where the [G]overnment's case was presented by impeached witnesses, while the testimony of the [D]efendant's witnesses was unwaiving [sic] and corroborated by independent evidence." United States v. Stevens, 277 Fed. Appx. 898, 902 (11th Cir. 2008) (per curiam) (quoting Martinez, 763 F.2d at 1314) (internal quotation marks omitted). Thus, the Court concludes that this evidence also does not preponderate heavily against the verdict such that a new trial is warranted.

Finally, to the extent Rounsville argues that no witness affirmatively testified that he accessed the law enforcement databases for financial gain, his argument is unpersuasive. As discussed above, the Government presented evidence that Rounsville received both a cash payment and a motorcycle from the leader of the underlying criminal enterprise. Nevertheless, Rounsville contends that the Government witnesses failed to definitively prove that he ever received cash, or any other form of compensation, in exchange for his assistance with conducting unauthorized background checks. See Motion at 2-3. Even if the testimony at issue does not unequivocally link Rounsville's receipt of the cash payment or the motorcycle to his use of the law enforcement databases, the jury was free to "use reasoning and common sense to make deductions and reach conclusions" supported by the evidence in reaching a verdict. See Final Jury Instructions at 4. Indeed, the Eleventh Circuit has stated that a "jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented. . ." United States v. Broughton, 689 F.3d 1260, 1277 (11th Cir. 2012) (quoting United States v. Garcia, 447 F.3d 1327, 1334

(11th Cir. 2006)) (reviewing the denial of a motion for judgment of acquittal).[3] Although the Court's statement in Broughton was made in the context of considering a motion for judgment of acquittal under Rule 29 where the court was bound by the jury's credibility decision, it is nonetheless instructive. See United States v. Hernandez, 433 F.3d 1328, 1336-37 (11th Cir. 2005) (finding that a grant of new trial would have been an abuse of discretion where the evidence "produced two conflicting stories, either of which the jury could have believed"). While the Court is not bound by the jury's determination here and may weigh the evidence and consider the credibility of the witnesses, it may not "set aside the verdict simply because it feels some other result would be more reasonable." Id. at 1336 (quoting Martinez, 763 F.2d at 1313-14). In this case, the jury's determination that Rounsville's receipt of either the cash payment or the motorcycle was in return for his running the name of the undercover agent through a law enforcement database is entirely reasonable based on the evidence presented. Where, as here, the jury's verdict is reasonable and the evidence does not heavily preponderate against it, a new trial is not appropriate. See id. at 1336-37. Rounsville's argument represents nothing more than his disagreement with the jury's verdict, and does not provide a basis for granting a new trial.

## III. Conclusion

Having considered the evidence adduced in this case as set forth more fully above, the Court cannot conclude that it preponderates heavily against the jury's verdict or that this case is one of those "really exceptional cases" where a new trial should be granted

---

[3] When Rounsville testified, he denied ever receiving the cash payment and gave an alternative explanation as to how he came into possession of the motorcycle. However, given the conflicting evidence, the jury was free to accept the testimony and evidence that it found more credible. See id. Here, that was not the testimony of Rounsville. In this regard, the Court notes that Rounsville's own testimony with respect to the motorcycle was internally inconsistent and at times inconsistent with that of his witness, George Terrell Walker.

based on the weight of the evidence. Martinez, 763 F.2d at 1313. Indeed, viewing the evidence as a whole in accordance with Rule 33, the Court readily concludes that the jury's verdict represents a reasonable view of the evidence and that the evidence presented was sufficient to support a finding of Rounsville's guilt. The Court therefore finds that Rounsville has failed to show that he is entitled to a new trial, or that the interests of justice demand that a new trial be granted. As such, the Court concludes that Rounsville's Motion is due to be denied. In light of the foregoing, it is

**ORDERED**:

Defendant Rounsville's Motion for New Trial (Doc. No. 335) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida on April 12, 2017.

*[Signature]*
MARCIA MORALES HOWARD
United States District Judge

lc24

Copies to:

Counsel of Record